The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on February 13, 1997 as
STIPULATIONS
1. The employer-employee relationship existed between defendant-employer and plaintiff.
2. Danny Mitchell d/b/a Mitchell's Custom Cabinets was non-insured.
3. Plaintiff's average weekly wage was $376.08.
4. On April 26, 1996 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer.
5. Defendant paid plaintiff $450.00 during the period plaintiff was out of work.
In addition, the parties stipulated into evidence a packet of medical records and reports.
***********
The Full Commission receives the 25 R prepared by Dr. Armistead into evidence without objection and amends the prior Opinion and Award filed on November 4, 1997 to include findings pertaining to plaintiff's permanent partial disability in the following
FINDINGS OF FACT
1. Defendant has been a sole proprietor in the business of building cabinetry. Plaintiff began working for him in late 1995 and worked continuously until April 26, 1996. Plaintiff's job was to build and install cabinets. During that time, Bob, Chris and Mike worked at the shop in various capacities and for variable hours. In addition, there were three painters, Ernesto, Paul and Tommy, who painted the cabinets. Their hours also varied. However, at least five people would work at the shop each week for some period of time during the two months before plaintiff was injured.
2. Plaintiff was the only worker paid by check with deductions taken for taxes and social security. Defendant considered the other workers to be subcontractors. However, he did not keep records of the time they worked or the amount they were paid, he did not file 1099 tax forms with the Internal Revenue Service for them, and he paid them in cash. Consequently, there were no records available to show specifically when anyone but plaintiff worked, on what basis they were paid or how much they were paid.
3. Bob, Chris and Mike were not cabinet makers. They ran errands and did odd jobs around the shop. They were sometimes paid by the hour and sometimes paid a fixed price for a particular job, such as doing a countertop. The type of work performed by these workers was not such that it would be considered a special skill such that they would likely be engaged in an independent trade or business. There was no evidence that they were required to provide their own tools or that they could have hired someone else an assistant. All of the workers were paid on an hourly basis for at least part of the time they worked for defendant. They worked on a regular basis for defendant and appeared to be subject to him for direction as to their work duties for that day.
4. On April 26, 1996 plaintiff was using a table saw to cut straight edges on pieces of lumber which were curved. That afternoon as he was cutting lumber in this manner, his left thumb came into contact with the saw blade and the tip of the thumb was severed. Ernesto was the only other person in the shop at the time and he took plaintiff to the hospital where the thumb was cleaned and bandaged. Plaintiff was referred to Dr. Armistead, an orthopedic surgeon, whom he saw on April 30, 1996. Dr. Armistead ordered some whirlpool therapy in order to eradicate what appeared to be early infection. He then performed surgery on May 3, 1996 to place a flap of skin over the pulp of the thumb and to repair the nail matrix.
5. Dr. Armistead continued to follow plaintiff through at least May 13, 1996. The sutures were removed on May 10 and by May 13 the thumb was noted to be healing rapidly. Plaintiff was supposed to return to the doctor after that office visit but the medical reports do not reveal further follow-up care. However, defendant did not have workers' compensation insurance so medical bills were probably a factor.
6. As a result of the injury by accident plaintiff sustained on April 26, 1996, he was unable to work and earn wages for five weeks. He was unable to work in any capacity for three weeks after the injury until Dr. Armistead released him to return to light duty work. Defendant provided work for him for one week and then sent him home. Plaintiff found another job two weeks later. However, no suitable work was offered to him by defendant during that two-week period when he was unable to perform his regular duties due to his injury.
7. At the request of the parties, no finding is made regarding the extent of permanent partial disability plaintiff sustained as a result of his injury.
8. Defendant has raised notice as an issue in this case. However, he and his wife picked plaintiff up from the hospital on April 26, 1996 and thus, he had actual knowledge of the injury. There was no evidence indicating when plaintiff gave written notice of the injury to him, but any delay in receiving such notice would not have prejudiced defendant.
9. As a result of the April 26, 1996 compensable injury by accident sustained by the plaintiff while employed with the defendant-employer, plaintiff sustained a twenty-seven percent permanent partial disabilty to his left thumb.
10. The appeal of this matter was based upon stubborn, unfounded litigiousness.
***********
Based upon the above findings of fact and the Opinion and Award filed on November 4, 1997, the undersigned makes the following
CONCLUSIONS OF LAW
1. At the time of plaintiff's injury, defendant regularly employed three or more employees and was therefore subject to and bound by the provisions of the Workers' Compensation Act. The other employees did not have an independent trade, skill or business, they were not performing specified work for a specified price, they worked on a regular basis for defendant and they were subject to his direction. Consequently, they were employees and not independent contractors. G.S. § 97-2; Askew v.Leonard Tire Company, 264 N.C. 168 (1965); McCraw v.Calvine Mills, Inc., 233 N.C. 524 (1951); Hayes v. Boardof Trustees of Elon College, 224 N.C. 11 (1944).
2. Plaintiff's claim is not barred by any failure to give written notice of his injury to his employer within thirty days in that defendant had actual knowledge of the injury and was not prejudiced by the delay in receiving written notice. G.S. §97-22.
3. Plaintiff is entitled to compensation at the rate of $250.72 per week for 5 weeks for the temporary total disability he sustained as a result of this injury by accident, subject to a credit in the amount of $450.00 for sums previously paid by defendant. G.S. § 97-29.
4. Plaintiff is entitled to have defendant provide all medical compensation arising from this injury by accident. G.S. §97-2(19); G.S. § 97-25.
5. Plaintiff is entitled to permanent partial disability compensation in the amount of $250.72 per week for twenty and one-fourth weeks for the permanent injury to plaintiff's left thumb. G.S. § 97-31(1).
6. The Industrial Commission may assess the whole cost of a proceeding against the defendant who defended this appeal based on unreasonable grounds. G.S. § 97-88.1.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant shall pay compensation to plaintiff at the rate of $250.72 per week for 5 weeks for his temporary total disability subject to a credit in the amount of $450.00. This compensation has accrued and shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
2. Defendant shall pay all medical expenses incurred by plaintiff as a result of this injury by accident when bills for the same have been submitted to and approved by the Industrial Commission.
3. An attorney's fee in the amount of 25 percent of the net compensation awarded is hereby approved for plaintiff's counsel, which fee shall be deducted from the aforesaid award and paid directly to Mr. Ward.
4. Defendant shall pay the costs.
5. Plaintiff's motion for attorney fees is GRANTED. Defendant shall pay as part of the costs of this appeal attorney fees in the amount of $1,000.00 to plaintiff's counsel. This fee is in addition to the attorney's fee awarded in paragraphs 3 and 6.
6. Defendant shall pay compensation to plaintiff at the rate of $250.72 per week for 20 and one-fourth weeks for his permanent partial disability. This compensation has accrued and shall be paid in a lump sum subject to a deduction for an attorney's fee in the amount of 25 percent of this lump sum. This attorney's fee shall be deducted and paid directly to Mr. Ward.
 S/ ______________ DOUGLAS E. BERGER DEPUTY COMMISSIONER
CONCURRING:
S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
S/ __________________ DIANNE C. SELLERS COMMISSIONER
DEB:sm